UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CAROLINA ARELLANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:17-cv-00046-TLS-SLC |
| ) | |
| MARSHALLS OF MA, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Entry of Judgment by Default Against Defendant C&M Cleaning Services ("C&M Cleaning") (DE 34), filed by Plaintiff Carolina Arellano on June 13, 2017, and a Motion for Entry of Judgment by Default Against Defendant Imperial Maintenance, Inc. ("Imperial") (DE 39), filed by Arellano on June 29, 2017.  On October 10, 2017, Chief Judge Theresa L. Springmann referred the motions to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72.1, to conduct any and all necessary evidentiary hearings and to issue a report and recommendation with proposed findings of fact and recommendations for the disposition of the motions.  (DE 52).

Having now held an evidentiary hearing (DE 64), and having examined Arellano's brief on damages and supplemental evidentiary submissions (DE 60; DE 65; DE 68), I RECOMMEND that Arellano's motions for default judgment (DE 34; DE 39) be DENIED as to Count I of the complaint and GRANTED as to Counts II and III of the complaint, and that a judgment be entered against C&M Cleaning and Imperial, jointly and severally, in the amount of $9,496.72.

## I. PROCEDURAL BACKGROUND

Arellano filed this suit against her alleged former joint-employers, Defendants C&M Cleaning, Imperial, Marshalls of MA, Inc. ("Marshalls"), and Kellermeyer Bergensons Services, LLC ("Kellermeyer"), on February 3, 2017, advancing claims of involuntary labor through abuse of legal process in violation of 18 U.S.C. § 1595; wage theft in violation of 29 U.S.C. § 216(b) and Indiana Code § 22-2-2-9; and race discrimination in violation of 42 U.S.C. § 1981. (DE 1). On March 6, 2017, Arellano filed an executed summons return as to each Defendant, evidencing service of the summons and complaint. (DE 7-DE 10).

On February 28, 2017, Imperial filed an answer *pro se*. (DE 6). Counsel appeared on behalf of Marshalls and Kellermeyer on March 13, 2017 (DE 11; DE 12; DE 14), and Marshalls and Kellermeyer each subsequently filed an answer (DE 21; DE 31). Kellermeyer also filed a crossclaim against C&M Cleaning and Imperial for breach of certain independent contractor agreements that Kellermeyer had with C&M Cleaning and Imperial. (DE 21 at 10; *see* DE 21-1; DE 21-2).

The Court conducted a preliminary pretrial conference on May 17, 2017, setting a discovery deadline of March 6, 2018. (DE 28). That same day, the Court issued a Notice and Order, observing that Imperial's answer was filed *pro se* and that a corporation cannot proceed *pro se* in federal court. (DE 29). The Court warned Imperial that if counsel did not appear on Imperial's behalf and file an answer by June 7, 2017, the Court would strike Imperial's *pro se* answer, subjecting Imperial to a default and possibly a default judgment. (DE 29).

On June 12, 2017, Arellano filed a motion for entry of default against C&M Cleaning, and the Clerk entered the default on June 13, 2017. (DE 32; DE 33). That same day, Arellano

filed the instant motion seeking the entry of a default judgment against C&M Cleaning. (DE 34).   On June 28, 2017, the Court struck Imperial's *pro se* answer because Imperial had failed to cause counsel to appear on its behalf by the deadline. (DE 36).  The next day, Arellano filed a motion for entry of default against Imperial, and the Clerk entered the default. (DE 37; DE 38). Late that same day, Arellano filed the instant motion seeking the entry of a default judgment against Imperial. (DE 39).

On October 26, 2017, the undersigned Magistrate Judge conducted a settlement conference, at which Arellano, Marshalls, and Kellermeyer appeared. (AR 54).  These parties reached a settlement agreement (DE 54), and Arellano's claims against Marshalls and Kellermeyer were dismissed on January 8, 2018 (DE 62).

On November 20, 2017, the undersigned Magistrate Judge set an evidentiary hearing for January 12, 2018, on Arellano's request for the entry of default judgments against C&M Cleaning and Imperial and the amount of damages due. (DE 55).  Arellano was directed to file a brief in support of her claimed damages on or before January 5, 2018, and Arellano timely did so. (DE 55; DE 60).

On January 12, 2018, the Court held an evidentiary hearing at which Arellano testified with the assistance of a Spanish language interpreter. (DE 64).  A paralegal from Arellano's counsel's law firm also testified as to the amount of attorney's fees incurred in this case. (DE 64).  After the hearing, the Court ordered Arellano to file a supplemental evidentiary submission with sufficient details about her settlement with Marshalls and Kellermeyer to prevent double recovery in the default judgments against C&M Cleaning and Imperial, and Arellano promptly did so. (DE 65; DE 67; DE 68).

## II.  STANDARD FOR ENTRY OF DEFAULT JUDGMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a); *see C & S Mgmt., LLC v. Superior Canopy Corp.*, No. 1:08-CV-00029, 2013 WL 5291961, at *1 (N.D. Ind. Sept. 18, 2013); *Wolf Lake Terminals v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005).  A default means that the factual allegations of the complaint (except those relating to the amount of damages) are to be taken as true and can no longer be contested.  *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989); *Estes Express Lines v. Lawson Prods. Corp.*, No. 4:08-cv-91-AS-APR, 2009 WL 1699658, at *1 (N.D. Ind. June 17, 2009).

Because the default only goes to the well-pleaded facts of the complaint, it remains for the Court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit to mere conclusions of law.  10A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2688 (3d. ed. 1998); *see also Black*, 22 F.3d at 1399; *Larance v. Bayh*, No. 3:94-cv-182RM, 1995 WL 46718, at *1 (N.D. Ind. Jan. 18, 1995) (collecting cases).  Thus, "[a] default judgment does not follow as a matter of right . . . after entry of default.  Judgment by default may be granted only for such relief as may lawfully be granted upon the well-pleaded facts alleged in the complaint."  *Larance*, 1995 WL 46718, at *1 (quoting 6 J. Moore & W. Taggart, *Moore's Federal Practice* ¶ 55.03[2], at 55-20 (1994)).

"Once the default is established, and thus liability, the plaintiff still must establish [her] entitlement to the relief [she] seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004); *see Wehrs v.*

4

*Wells*, 688 F.3d 886, 892 (7th Cir. 2012) ("Upon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." (citing *Di Mucci*, 879 F.2d at 1497; 10A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2688, at 58-59 (3d ed. 1998 & Supp. 2012)). The Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *In re Catt*, 368 F.3d at 793 (citation omitted). The Seventh Circuit has made clear that "judgment by default may not be entered without a hearing on damages unless 'the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see Wehrs*, 688 F.3d at 892 ("[D]amages must be proved unless they are liquidated or capable of calculation." (quoting *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990))).

### III.  LIABILITY

#### A.  The Allegations in Arellano's Complaint

Arellano alleges the following, in relevant part, in her complaint:

(1) she is "a brown-skinned woman and an individual with very limited English language skills," and a "Mexican national, Spanish language speaker, and undocumented immigrant" (DE 1 ¶ 2);

(2) between May 2015 and November 2015, she was employed by Defendants as a janitor at a Marshalls department store, and she worked there in that capacity seven days a week (DE 1 ¶¶ 6-7);

5

(3)     Defendants, Arellano's former "joint-employers" (DE 1 ¶ 3), "knew Ms. Arellano had a very limited understanding of the English language, the U.S. legal system, and U.S. labor and employment laws"; and that "if they failed to provide her information about these laws and systems in Spanish, provided her misinformation about these laws, or refused to pay her, Ms. Arellano would not have enough knowledge of these laws and systems to be able to assert her rights" (DE 1 ¶ 9; *see also* DE 1 ¶ 13);

(4)     Defendants "did not provide her adequate or intelligible labor or wage information, promised to properly pay her but never did so, and intentionally set about obtaining involuntary labor from her" (DE 1 ¶ 10);

(5)     "Defendants repeatedly failed to pay Ms. Arellano or issued her checks that could not be redeemed due to insufficient funds" (DE 1 ¶ 11);

(6)     "Through these acts and omissions, Defendants intentionally and maliciously caused Ms. Arellano to work without lawful minimum payment" (DE 1 ¶ 12);

(7)     when "Ms. Arellano insisted that she could not continue to work without full payment, Defendants . . . notified her that they would not pay her the wages they owed her because of 'irregularities' and because of her 'documentation' status" (DE 1 ¶ 14);

(8)     Arellano was constructively discharged due to Defendants' failure to pay her (DE 1 ¶ 15); and

(9)     "No white employee of Defendants was subject to the labor and wage violations to which Ms. Arellano was subject during her employment."  (DE 1 ¶ 16).

### B. Count I, Involuntary Labor Claim

In Count I, Arellano advances an involuntary labor claim, alleging that Defendants

knowingly and intentionally obtained her involuntary labor through abuse of the legal process.

(DE 1 ¶ 18).  The relevant statute on forced labor, 18 U.S.C. § 1589(a), provides:

> Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means –
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished as provided under subsection (d).

In turn, § 1589(c)(1) defines "abuse or threatened abuse of law or legal process" as:

> [T]he use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

18 U.S.C. § 1589(c)(1).  And § 1589(c)(2) defines "serious harm" as:

> [A]ny harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).

7

In a footnote in her complaint, Arellano cites *United States v. Calimlim*, 538 F.3d 706, 712-13 (7th Cir. 2008), urging that providing misinformation about the law or hiding the law in order to prevent an individual from using the legal process or knowing of its existence violates § 1589(a)(3). (DE 1 ¶ 10 n.2). But *Calimlim* does not help Arellano's claim, as the defendants in *Calimlim* kept the employee under physical restraint and caused her to believe that she might be deported and that her family would be seriously harmed because she would no longer be able to send money. *Calimlim*, 538 F.3d at 710. The Seventh Circuit observed that the employee in *Calimlim* "did not have an exit option." *Id*. at 712.

Here, in contrast, the complaint lacks any allegation that Defendants threatened Arellano, explicitly or implicitly, with deportation or any other legal process. Rather, Arellano apparently always had an exit option—to quit her employment—and she eventually did just that. *See Does I v. Gap, Inc.*, No. CV-01-0031, 2002 WL 1000068, at *14 (D.N. Mar. I. May 10, 2002) ("[T]he court cannot reasonably infer that the plaintiffs' free will had been overcome and that the plaintiffs had no choice but to work."). In fact, Arellano's allegation that she was "constructively discharged" by Defendants (that is, that she was "forced to resign," *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010)), seems fundamentally at odds with her claim of involuntary labor. *See John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1014 (S.D. Ind. 2007) ("It would seem that the expressed fear of losing one's current employment is a clear indicator that the current employment is not forced labor.").

Arellano also cites *Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 958 (S.D. Ind. 2013), in a footnote of her complaint in support of her assertion that threatened financial harm may constitute "serious harm" for purposes of § 1589(a)(2). (DE 1 ¶ 14 n.3). But in *Panwar*,

8

the employer required the employee to sign a $20,000 promissory note that the employee would have to pay back if he terminated his employment, and the employer threatened to revoke the employee's visa if he continued to inquire about placement or wages. *Id*. at 957 ("[T]he plaintiff may not simply re-label a claim based entirely upon allegations that the defendant violated the H-1B Visa program requirements as a TVPA claim; there must be some additional threat of harm involved." (citation omitted)). There, the Court concluded:

> While the alleged failure to pay Mr. Panwar for non-productive time is technically a violation of the [Immigration and Nationality Act], it was the threat of being in debt to the Defendants under the $20,000.00 Promissory Note and having his visa revoked that kept Mr. Panwar from voluntarily terminating his employment, not just the immigration law violation itself.

*Id*. at 958; *see also John Roe I*, 492 F. Supp. 2d at 1013 ("Plaintiffs allege that they have nothing left after they spend their wages at company stores and other company facilities (such as schools), but they do not allege induced indebtedness.").

In contrast to *Panwar*, the complaint here lacks any allegation by Arellano of a threat of financial or other serious harm that kept her from terminating her employment. Rather, "the gravamen of [Arellano's complaint] is that [s]he was simply not paid the wages [s]he was owed." *Mohammed v. Sidecar Techs., Inc.*, No. 16 C 2538, 2016 WL 6647946, at *2 (N.D. Ill. Nov. 10, 2016) (dismissing plaintiff's involuntary servitude claim). The evidence presented at the evidentiary hearing bolsters this conclusion. Therefore, Count I fails to state a claim for involuntary labor, and as such, I FIND that Arellano's motion for default judgment should be denied as to Count I.

### C. Count II, Wage Theft

In Count II, Arellano alleges that Defendants, her former "joint-employers,"

"intentionally and in bad faith failed to make timely minimum wage payments to Ms. [Arellano]."  (DE 1 ¶¶ 3, 20).  In doing so, Arellano cites a portion of the Fair Labors Standard Act ("FLSA"), 29 U.S.C. § 216(b), and a provision of the Indiana Minimum Wage Act, Ind. Code § 22-2-2-9.  (DE 1 ¶ 20).

In pleading these claims, Arellano alleges that she worked seven days a week between May 2015 and November 2015, and that Defendants "promised to properly pay her but never did so," "repeatedly failed to pay [her] or issued her checks that could not be redeemed due to insufficient funds," withheld "lawful minimum payment," "notified her that they would not pay her the wages they owed her," and "refus[ed] to pay her."  (DE 1 ¶¶ 6-7, 10-12, 14-15).  Arellano, however, offers little specific factual detail in her complaint concerning the hours worked, the wages earned, and the wages purportedly due.  She did, however, attach to her complaint a notice from the Office of the Attorney General for the State of Indiana that refers to her wage claim of "$7,350, plus reasonable attorney fees and costs."  (DE 1-1).

In her testimony at the evidentiary hearing, Arellano elaborated on the allegations in her complaint:  She worked between two-and-a-half and three hours each morning, seven days a week, between May 2015 to November 2015.  (Hrg. Ex. C).  She worked between 15 and 20 hours each week.  (Hrg. Ex. C).  Her promised wage was $350 for 15 days of work.  (Hrg. Exs. C, D).  C&M Cleaning Services issued her a paycheck for $350 on August 3, 2015; August 19, 2015; and September 2, 2015, copies of which were submitted at the hearing.  (Hrg. Ex. D).  She may have received a few other paychecks, but she cannot locate those copies.  She knows, however, that Defendants failed to issue her seven paychecks for work that she performed between May 2015 and November 2015.  Defendants simply failed to issue her any paycheck at

10

all as to five of the outstanding pay periods, and as to the other two, Defendants issued her a paycheck but it was unable to be redeemed due to insufficient funds. In sum, Defendants failed to pay Arellano $2,450 in wages that are due to her.

As to her state-law claim, Arellano cites the Indiana Minimum Wage Law, but her claim also seems to arise under the Indiana Wage Claims Statute, Indiana Code § 22-2-9-2, in that she alleges that she was constructively terminated by Defendants and she brings this action well after her termination. *See Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011) (explaining that the Indiana Wage Claims Statute, Indiana Code § 22-2-9-2, applies to employees seeking unpaid wages after their employer has fired them, where the Indiana Wage Payment Statute, Indiana Code § 22-2-5-2, applies to current employees and employees who voluntarily leave their employment, who are seeking unpaid wages); *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104-5 (7th Cir. 2008). As stated above, Arellano attaches to her complaint a notice from the Office of the Indiana Attorney General authorizing Arellano's counsel pursuant to Indiana Code § 22-2-9-4 to pursue Arellano's wage claims against Defendants (DE 1-1), indicating that Arellano presumably has exhausted any applicable administrative remedies prior to filing suit. *See, e.g.*, *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 73 F. Supp. 3d 1030, 1040 (S.D. Ind. 2014) (discussing the administrative exhaustion requirement for wage claims under Indiana law); *Reel v. Clarian Health Partners, Inc.*, 917 N.E.2d 714, 720 (Ind. Ct. App. 2009) (finding that a plaintiff seeking relief under the Indiana Wage Claims Statute must first submit the claim to the Department of Labor before filing a lawsuit in court). As such, I FIND that Arellano has sufficiently pled her state-law claim that Defendants failed to pay her wages for all the hours she worked during the course of her

11

employment.

As to her FLSA claim, Arellano's allegations that Defendants are her former "joint-employers" and that she worked as a janitor in a Marshalls department store are sufficient to satisfy that the FLSA applied to Defendants. *See, e.g.*, *Brown v. ABM Indus., Inc.*, No. 15 C 6729, 2015 WL 7731946, at *2-4 (N.D. Ill. Dec. 1, 2015) (finding that plaintiff sufficiently alleged that defendants fulfilled the definition of employer under the FLSA); *Radulescu v. Moldowan*, 845 F. Supp. 1260, 1264 (N.D. Ill. 1994) (concluding that janitors working in apartment buildings managed by the defendant were engaged in commerce sufficient to entitle protection under the FLSA). Accordingly, I FIND that Arellano has also sufficiently pled her FLSA claim that Defendants failed to pay her wages for all the hours she worked during the course of her employment.

Based on this record, I will RECOMMEND that Arellano's motion for default judgment be GRANTED as to Count II, her unpaid minimum wages claim under the FLSA and Indiana law. *See, e.g.*, *Villanueva v. Falcon Const. Co., Inc.*, No. 2:09-CV-107-PPS-PRC, 2011 WL 1114430, at *2 (N.D. Ind. Mar. 24, 2011) (accepting the plaintiff's allegations that defendants failed to pay her for all the hours she worked during the course of her employment and entering a default judgment against defendants on plaintiff's claims under the FLSA and the Indiana Wage Claims Statute).

### D. Count III, Racial Discrimination Claim

In Count III, Arellano alleges that Defendants "knowingly and intentionally discriminated against [her] in employment in violation of 42 U.S.C. § 1981 by refusing to permit her to make and enforce contracts and to enjoy the full and equal benefit of all laws as enjoyed

12

by their white employees." (DE 1 ¶ 22).

As recited earlier, Arellano also alleges in her complaint that she is a "brown-skinned woman" and a "Mexican national," that she was employed by Defendants, and that she was "constructively discharged" by Defendants. (DE 1 ¶¶ 2, 15). Additionally, at the hearing Arellano described her race as "Hispanic." Arellano alleges that "[n]o white employee of Defendants was subject to the labor and wage violations to which [she] was subject during her employment." (DE 1 ¶ 16).

"Section 1981 forbids racial discrimination in the creation of private as well as public contracts." *Sauceda v. Cent. Pool Supply, Inc.*, No. 4:14-cv-04053-SLD-JEH, 2015 WL 428167, at *2 (C.D. Ill. Jan. 30, 2015) (citing *Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 668-69 (7th Cir. 2014); *Runyon v. McCrary*, 427 U.S. 160, 168 (1976)). "It does not create a cause of action for discrimination based purely on national origin." *Id.* (citing *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993); *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984)). "However, for the purposes of § 1981 actions, 'the line between discrimination based on ancestry or ethnic characteristics and discrimination based on place or nation of . . . origin is not a bright one.'" *Id.* (alteration in original) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring)). Consequently, courts have "exercised an expansive interpretation of § 1981 in many cases where a plaintiff pleaded what could have been construed narrowly as only a national origin." *Id.* (collecting cases).

Here, Arellano's allegation that she is a "Mexican national" does not alone state a § 1981 claim, because as explained above, "§ 1981 does not prohibit discrimination based on national origin." *Wallace v. Graphic Mgmt. Assocs., Inc.*, No. 04-CV-0819, 2005 WL 527112, at *3

13

(E.D. Pa. Mar. 3, 2005). However, Arellano's allegation of nationality is coupled with allegations that she is a "brown-skinned woman" and that "[n]o white employee . . . was subject to the labor and wage violations." (DE 1 ¶¶ 2, 16). Furthermore, as explained above, at the hearing Arellano described her race as Hispanic. This is sufficient to allege discrimination based on race, ethnicity, or ancestry under § 1981. *Wallace*, 2005 WL 527112, at *3-4 (allowing § 1981 claim to go forward where plaintiff claimed that she was discriminated against because she was a "brown-skinned woman of African origin"); *see also Villanueva v. Wellesley Coll.*, 930 F.2d 124, 129 (1st Cir. 1991); *Gonzalez v. Stanford Applied Eng'g, Inc.*, 597 F.2d 1298, 1300 (9th Cir. 1979); *Carlos De La Torres v. Gianni Furniture Co.*, No. 85 C 9924, 1986 WL 6407, at *2 (N.D. Ill. 1986); *Shah v. Fireman's Fund Ins. Co.*, No. C-82-0891 SC, 1982 WL 324, at *2 (N.D. Cal. June 4, 1982); *Ortega v. Merit Ins. Co.*, 433 F. Supp. 135, 138-39 (N.D. Ill. 1977).

Thus, Arellano has adequately alleged the elements of a § 1981 discrimination claim. *See Rapid Test Prods., Inc. v. Durham Sch. Servs.*, No. 03 C 2431, 2007 WL 4219420, at *1 (N.D. Ill. Nov. 27, 2007) (listing the elements of a § 1981 discrimination claim as "(1) plaintiff is a member of a racial minority; (2) defendant had intent to discriminate based on race; and (3) the discrimination concerned the 'making or enforcing of a contract'" (quoting 42 U.S.C. § 1981)). Therefore, I will RECOMMEND that Arellano's motion for default judgment be GRANTED as to Count III as well.

## IV. DAMAGES

I will now turn to the issue of damages. As explained above, I have conducted an inquiry, including an evidentiary hearing, in order to ascertain the amount of damages with "reasonable certainty." *Wehrs*, 688 F.3d at 892.

14

A. *Damages Other Than Attorney's Fees*

Because Arellano failed to plead a plausible claim for involuntary labor under Count I, she is not entitled to any damages on that claim. With respect to her wage theft claims in Count II, Arellano may recover her unpaid wages and an amount in liquidated damages equal to her unpaid wages under both Indiana Code § 22-2-5-2 and the FLSA, 29 U.S.C. § 216(b). Therefore, Arellano's recovery under both Indiana Code § 22-2-5-2 and the FLSA is $2,450 in unpaid wages and an additional $2,450 in liquidated damages. Under her § 1981 race discrimination claim in Count III, Arellano may recover lost wages, pain and suffering, and punitive damages. As already explained, Arellano is entitled to $2,450 in unpaid wages.

Arellano seeks an additional amount in lost wages pursuant to her § 1981 claim. In her supporting brief, she estimates that she lost $100 each week while seeking a comparable position—that is, from November 2015, when she left her employment with Defendants, to May 2016, when she obtained a new full-time job at Saratoga Chips.[1] (DE 60 at 7). But Arellano did not substantiate these lost wages with any evidence at the hearing. Arellano stated that her employment with Defendants was one of two jobs that she held at the time, and she did not explain what her other job was or how much she earned there. Nor did she state what her full-time salary was in May 2016 at Saratoga Chips. In short, on this record, the Court has no basis upon which to award Arellano an additional $100 per week in lost wages from November 2015 to May 2016.

In her supporting brief, Arellano also seeks "compensatory noneconomic" damages in the amount of $5,000 on her § 1981 claim. While Arellano does not describe what these damages

---

[1] Although Arellano argues in her brief that she obtained a permanent job with Saratoga Chips in July 2016 (DE 60 at 7), at the hearing she testified that she obtained the position in May 2016.

arise from, presumably they are for mental distress that she experienced when she failed to receive compensation for her hours worked, while other Caucasian employees were being paid in full. To that end, at the hearing Arellano testified that she felt "angry" when Defendants failed to pay her wages, explaining that she was working to support herself and her four children back in Mexico. She did not, however, testify that she experienced any other feelings, such as anxiety, loss of sleep, or similar. While it is reasonable to expect that Arellano suffered some mental distress as a result of Defendants' failure to pay her the wages due, Arellano has produced a rather thin record of such mental distress. Consequently, I FIND it reasonable to reduce her requested compensatory damages for mental distress from $5,000 to $2,500.

Arellano also asks in her supporting brief that the Court award her punitive damages against Defendants on her § 1981 claim. However, "punitive damages based on a default judgment appear to be the exception rather than the rule in the Seventh Circuit." *Dvore v. Casmay*, No. 06-CV-3076, 2009 WL 211856, at *6 (N.D. Ill. Jan. 29, 2009) (citing *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990)). This case does not fall within the exception to that general rule, particularly considering the rather thin record for damages presented by Arellano. In fact, Arellano never even mentioned punitive damages at the hearing. Accordingly, I FIND that an award of punitive damages against Defendants is not warranted in this instance.

### B. Attorney's Fees and Costs

Arellano is also entitled to recover her reasonable attorney's fees and costs under Indiana Code § 22-2-5-2, the FLSA, and § 1981. Arellano seeks to recover $7,296.72 in attorney's fees and costs through November 13, 2017. (Hrg. Ex. E).

Although Arellano was unsuccessful on her claim of involuntary labor, that claim is related to her other two successful claims by a "common core of facts." *Walters v. Mayo Clinic Health Sys.–Eau Claire Hosp. Inc.*, 91 F. Supp. 3d 1071, 1081 (Mar. 5, 2015) (citing *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645-46 (7th Cir. 1995)). Accordingly, the attorney's fees associated with Arellano's claim for involuntary labor should not be excluded. *See id.* (citing *Spellan*, 59 F.3d at 645-46). Having examined Arellano's counsel's itemized fee statement (Hrg. Ex. E), I FIND that the amount of requested attorney's fees and costs is reasonable.

### C. No Duplicative Recovery

Because Arellano seeks relief in various claims for the same underlying wrong, the Court must ensure that she does not receive a duplicative recovery. *See Collins v. Kibort*, 143 F.3d 331, 339-40 (7th Cir. 1998) ("[T]he law abhors duplicative recoveries." (citation and quotation marks omitted)); *see also Volk v. Coler*, 845 F.2d 1422, 1436 (7th Cir. 1988) (plaintiff may not receive two recoveries for the same alleged wrongs); *Falcon Constr. Co.*, 2010 WL 1577277, at *5. While Arellano is entitled to recover unpaid wages, liquidated damages, and attorney's fees and costs under both Indiana Code § 22-2-5-2 and the FLSA, and to recover unpaid wages and attorney's fees under § 1981, she may not be awarded duplicative damages for her unpaid wages, liquidated damages, and attorney's fees and costs. As stated above, Arellano is entitled to recover $2,450 in unpaid wages, $2,450 in liquidated damages, and attorney's fees and costs associated with those claims under both Indiana Code § 22-2-5-2 and the FLSA, but she may not receive double recovery of such amounts.

In that same vein, Arellano cannot recover against C&M Cleaning and Imperial in the

default judgment any damages that are encompassed by her settlement with Marshalls and Kellermeyer.  *See, e.g.*, *PNC Bank, N.A. v. Naborhood Bldg. Prods., LLC*, No. 13-0307-WS-B, 2013 WL 5587890, at *3 (S.D. Ala. Oct. 10, 2013) ("This Court's duty to assure the legitimacy of any damages award includes an obligation to verify that any damages awarded against Naborhood are neither duplicative nor redundant of plaintiff's settlement with the other defendants.").  To that end, I ordered Arellano to file a supplemental evidentiary submission with sufficient details about her settlement with Marshalls and Kellermeyer so that the Court could prevent any double recovery in the default judgment against C&M Cleaning and Imperial. (DE 67).

Arellano's supplemental evidentiary submission (DE 65; DE 68) reveals that her counsel has already collected $5,200 in attorney's fees and costs in this case.  (DE 65-1).  Accordingly, to prevent double recovery, Arellano will be awarded the remaining $2,096.72 in attorney's fees and costs that is outstanding.  Having made this adjustment, I am satisfied that a default judgment in the total amount of $9,496.72 will not result in double recovery to Arellano, and that Arellano has established the following damages with reasonable certainty:  $2,450 in unpaid wages, $2,450 in liquidated damages, $2,500 in mental distress damages, and $2,096.72 in attorney's fees and costs.  Accordingly, I will RECOMMEND that a default judgment be entered against C&M Cleaning and Imperial, jointly and severally, in the amount of $9,496.72.

## V.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the Court GRANT the Motion for Entry of Judgment by Default Against Defendant C&M Cleaning Services (DE 34) and the Motion for Entry of Judgment by Default Against Defendant Imperial

Maintenance, Inc. (DE 39), and ENTER a default judgment in favor of Plaintiff Carolina Arellano and against Defendants C&M Cleaning Services and Imperial Maintenance, Inc., jointly and severally, in the amount of $9,496.72.

The Clerk is directed to send a copy of this Report and Recommendation to Defendants C&M Cleaning and Imperial, and to the other parties' counsel. Fed. R. Civ. P. 72(b). NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995); *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

SO ORDERED.

Entered this 2nd day of February 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge